UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

John Doe,

        *Plaintiff*,                                                    No. 1:24-cv-07774

        v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS INC.,
CE OPCO, LLC d/b/a COMBS GLOBAL f/k/a
COMBS ENTERPRISES LLC, BAD BOY
ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC,
ORGANIZATIONAL DOES 1-10, and MACY'S INC.

        *Defendants*.

---------------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO
# THE COMBS DEFENDANTS' MOTION TO DISMISS

**CURIS LAW, PLLC**
Antigone Curis
52 Duane Street, 7th Floor
New York, New York 10007

Plaintiff John Doe ("Plaintiff"), by and through his undersigned counsel Curis Law, hereby files this Memorandum of Law in Opposition to Defendants Sean Combs, Daddy's House Recordings Inc., CE OpCo, LLC d/b/a Combs Global f/k/a Combs Enterprises, LLC, Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Entertainment LLC, and Bad Boy Productions LLC's (the "Combs Defendants") motion to dismiss Plaintiff's Complaint pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). For the reasons set forth herein, the Combs Defendants' Motion should be denied.

## PRELIMINARY STATEMENT

This action seeks relief for a brutal sexual assault carried out by defendant Sean Combs ("Combs") in 2008 in a Macy's stockroom in New York City. The allegations contained in the Complaint, when taken as true and drawing reasonable inferences therefrom, indicate that the Combs Defendants and Macy's conspired with and enabled Combs to commit a crime of violence motivated by gender.

At the time of the assault, Plaintiff was an advisor for Ecko, a popular hip-hop clothing brand and rival to Combs' clothing brand, Sean John (wholly owned by Combs Defendant Bad Boy Entertainment). In or around May 2008, while working for Ecko on location at Macy's flagship store in Herald Square, Plaintiff encountered Combs and multiple bodyguards in Macy's stockroom. One of the men hit Plaintiff around the base of his neck and forced him to his hands and knees. Surrounded by armed bodyguards, Combs stepped forward and orally raped Plaintiff while making demeaning comments directed at Plaintiff. After finishing this shocking and depraved assault, Combs and his bodyguards calmly gathered up Sean John apparel and went back on to the Macy's retail floor as if nothing had happened.

Plaintiff immediately reported the sexual assault to Macy's security – but Macy's ignored that report and took no action against Combs. Rather, in unconscionably cruel fashion, Macy's CEO Terry Lundgren successfully lobbied Ecko to terminate Plaintiff's employment. Why? Because Macy's had just signed a multi-million-dollar deal with Sean John and Macy's *had to protect Combs and the value of its deal*. Plaintiff's report of the assault also appears to have been destroyed or otherwise purged from Macy's records, to complete the whitewashing of Combs' criminal acts against Plaintiff on Macy's property.

At the time of the assault, Combs was pursuing Sean John business between Sean John and Macy's, on Macy's property. It is reasonable to infer from Combs' actions (and Macy's actions at the time and afterwards) that the Combs Defendants as well as Macy's were well aware of Combs' violent, sadistic predilections before the time of the assault – and certainly immediately after. And by ignoring or acting to cover up Combs' sexual assault, the Combs Defendants effectively adopted a violation of the Victims of Gender-Motivated Violence Protection Law ("VGMVPL") as a commercial strategy. These facts demonstrate the likelihood that the Combs Defendants will be found liable for "enabl[ing]…participat[ing] in, or conspir[ing] in the commission of a crime of violence motivated by gender." *See* N.Y.C. Admin Code § 10-1104.

The Combs Defendants set forth four arguments in support of dismissal, all of which fail. *First*, the Combs Defendants argue the Plaintiff's claims are barred and the VGMVPL's two-year revival window is preempted by other state law. *Second*, they argue that Plaintiff's Complaint fails to plead sufficient facts to show Combs' acts were due, at least in part, to an animus based on the victim's gender. *See* N.Y.C. Admin Code § 10-1103. *Third*, the Combs Defendants argue that the VGMVPL cannot apply retroactively against corporate defendants, because the original VGMVPL applied only to any "individual," even though the 2022 amendment to the VGMVPL

expanded the scope to any "party." *Fourth*, the Combs Defendants allege the GMVL claim against the company defendants fails because there are no allegations of conduct subjecting them to liability. For the reasons set forth herein, Defendants' motion must be denied in its entirety.

## STANDARD OF REVIEW

Under Rule 8, a complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether the plaintiff is entitled to offer evidence to support her claims." *Palkovic v. Johnson*, U.S. App. LEXIS 12600, *5 (2d Cir. Jun. 13, 2008). Therefore, in considering Defendant's motion to dismiss, the Court must accept as true all of the factual allegations in the Complaint and draw all inferences in Plaintiff's favor. *Rolon v. Henneman*, 517 F.3d 140, 142 (2d Cir. 2008). Further, the Court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. *Leavitt v. Bear Sterns & Co.*, 340 F.3d 94, 101 (2d Cir. 2007).

## COUNTERSTATEMENT OF RELEVANT FACTS

On October 14, 2024, Plaintiff filed his Complaint ("*Compl.*") [Dkt. No. 1] against Sean Combs ("Combs"), various corporate defendants owned or controlled by Combs, and Macy's. The claims set forth in the Complaint arise from Combs' sexual assault of Plaintiff in 2008, while in the stockroom of Macy's flagship store at Herald Square in Manhattan. *Compl.* ¶ 38-41. At the time of the assault, Plaintiff was working as an advisor for Ecko Clothing, a rival of Combs' clothing line, Sean John. *Compl.* ¶ 35-37. Defendant Combs was there in connection with his

Sean John line. *Compl.* ¶¶ 36-38, 42. After entering the Macy's stockroom, Plaintiff was hit, forced to the ground, surrounded by armed bodyguards of Combs', and then sexually assaulted by Combs. *Compl.* at ¶¶ 35-40. Plaintiff alleges Combs orally raped Plaintiff and made derogatory comments like "[y]ou like that, white boy?" *Compl.* ¶ 41. After he was finished, Combs gathered Sean John merchandise from the stockroom and passed it out to a crowd outside, as if nothing had happened. *Compl.* ¶ 42.

Plaintiff immediately reported the sexual assault to Macy's, but his report was ignored. *Compl.* ¶ 43. Shortly thereafter, Macy's stopped letting Plaintiff into the store. *Id.* Macy's CEO, Terry Lundgren, later pressured Ecko to fire Plaintiff because Macy's had just signed a multi-million-dollar deal with Combs' clothing company, Sean John Clothing. *Compl.* ¶ 44. Ecko complied, and evicted Plaintiff from his company-paid apartment. *Compl.* ¶ 44. Plaintiff is informed and believes that the report of the assault was destroyed or otherwise purged from Macy's records. *Compl.* ¶ 45.

## ARGUMENT

**A. Retroactive Application of GMVL is Accepted and Defendants Misapprehend State Law Preemption Principles**

As originally enacted, the VGMVPL provided victims of gender-motivated crimes of violence with a cause of action against only the individual who perpetrated the crime. (See NYC Municipal Code Title 10, Chapter 11, §10-1104, eff. Dec. 19, 2000.) Effective January 2022, the City Council amended §10-1104 to provide "any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motived by gender has a cause of action against such party." (§10-1104, eff. Jan. 9, 2022.) In the same enactment, the City Council also amended §10-1105, entitled "Limitations," to provide: "any civil claim or cause of action brought under this chapter that is barred because the

applicable period of limitations has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022." Taken together, the two amendments (1) expanded liability to non-perpetrator defendants where no liability had previously existed and (2) revived causes of action brought under the statute whose limitations period had already expired. Neither §10-1104 nor §10-1105 have express provisions that apply the VGMVPL to causes of actions accruing before its 2000 enactment.

Defendants' arguments are contrary to the VGMVPL's primary intention: to make it easier for victims of gender-motivated violence to seek civil remedies in court—not, as Defendants would have it, make it harder. New York City passed the VGMVPL "[i]n light of the void left by the Supreme Court's decision" in *United States v. Morrison*. N.Y.C. Admin. Code § 8-902. *Morrison* struck down the federal right of action for victims of gender-motivated violence under the Violence Against Women Act (VAWA) (42 U.S.C. § 13981), holding that Congress lacked the authority under the Commerce Clause and the Fourteenth Amendment to pass such a remedy. 529 U.S. 598, 627 (2000).

"It is fundamental that in interpreting a statute, the court should attempt to effectuate the intent of the Legislature." *Cadiz-Jones*, 2002 WL 34697795, at *1 (Sup. Ct. NY. Cnty. Apr. 9, 2002) (holding VGMVPL was intended to apply retroactively) (citing *Patrolmen's Benevolent Assn. v City of New York*, 41 N.Y.2d 205, 208 (1976)). The Council intended the VGMVPL to make it easier for victims of gender-motivated violence to seek court remedies. *Id.* It intended the same when it passed the 2022 amendment to the law. *See, e.g., City Council H'rg Testimony* (Nov. 29, 2021) at 41 (testimony in support of act's passage describing sexual abuse in 1993); Hr'g Tr. (Nov. 29, 2021) at 129–30 ("In summary, there is no timeline on processing trauma. Not passing this Bill means we would be denying what it means to be fundamentally

human and denying the research and the science that it takes some of us longer than other, not only to come forward, but to tell our story."), 131 ("I am here to tell you that a victim doesn't have a set time for when they came come forward. . .. Please pass the amendment to allow the window for justice to be pursued by all victims of gender-motivated violence." (emphasis added)). "Based on an analysis of statutory text and history" it is clear that "the legislative body intended [the VGMVPL] to apply retroactively." *Cadiz-Jones*, 2002 WL 34697795, at *1.1. The Complaint is not time barred and Plaintiff's VGMVPL claim is valid.

The Complaint is furthermore not time barred because of the VGMVPL's explicit revival window, within which the Complaint was filed. Defendants are incorrect that the VGMVPL revival statute is preempted by the Child Victims' Act ("CVA"). Judge Clarke of the Southern District of New York thoroughly analyzed this issue and found that field preemption did not bar the revival statute, that the CVA did not indicate an intent to occupy the field, that the CVA was not a "comprehensive and detailed regulatory scheme," and that conflict preemption did not bar the revival statute. *See Doe v. Black*, No. 23-CV-6418 (JGLC), 2024 U.S. Dist. LEXIS 175929, *6-20 (S.D.N.Y. 2024). Judge Clarke's opinion establishes that there is no basis on which to find preemption of the VGMVPL's revival window.

### B.     Plaintiff Adequately Pleaded Gender Animus

Under the VGMVPL, a crime is "motivated by gender" if it involves "an animus based on the victim's gender" (NYC Admin. Code §10-1104). Courts have repeatedly held that sexual violence inherently demonstrates gender-based animus:

- *Breest v. Haggis* (180 AD3d 83, 94 [1st Dept. 2019]): "Without consent, sexual acts… are a violation of the victim's bodily autonomy and an expression of contempt for that autonomy. Animus inheres where consent is absent."

- *Engelman v. Rofe* (194 A.D.3d 26 [1st Dept. 2021]): Found gender-based animus in sexual assaults involving groping and coerced sexual acts.

Here, Plaintiff alleges acts of sexual violence—rape in a semi-public place while surrounded by gun-wielding bodyguards—that dehumanized him and disregarded his autonomy. Such acts clearly demonstrate gender-based animus, both on its face as well as within the aforementioned binding precedent.

The GMVA does not require Plaintiffs to show animus directed at an entire gender group. Individual instances of gender-based violence satisfy the animus requirement (*Cespedes v. Weil*, 2021 WL 495752 [Sup. Ct. 2021]).

The Combs Defendants would have this Court believe that only violent sexual acts committed by a man against women are evident of animus against women and the same cannot be true for male-on-male sexual abuse. However, that is against the legislative intent of the GMVL and simply illogical. It does not follow that just because Mr. Combs sexually assaulted men and women does not mean that his sexual abuse towards men was not due to an animus against the male gender. It also does not matter that Defendants are unaware of any case finding gender animus in cases involving male-on-male sexual violence. The absence of such a case does not equate to precedent rejecting such animus.

Defendants also argue that the assault was, if anything, only business-related. This argument fails as well. During the assault Combs also asked Plaintiff, "You like that, white boy?" (*Compl.* ¶ 41) That statement, in context, indicates animus on the basis of both race and gender. It also, in context, indicates that Combs' motivation was dominance, an impulse often exhibited by men over other men. But it isn't an either/or choice. The Combs Defendants cannot explain why only *one* animus is relevant. It is entirely possible that Combs' assault on Plaintiff was driven by

*all of* gender, race and business animus. Moreover, the Combs Defendants overlook the explanation in *Breest* that, "[r]ape and sexual assault are, by definition, actions taken against the victim without the victim's consent. Without consent, sexual acts such as those alleged in the complaint are a violation of the victim's bodily autonomy… [m]alice or ill will based on gender is apparent from the alleged commission the act itself. Animus inheres where consent is absent." *Breest,* 180 AD3d at 94.

Therefore, the Complaint should not be dismissed as the Plaintiff has sufficiently established gender animus.

## C. It is Premature to Dismiss the Company Defendants

As shown in section A above, the VGMVPL applies retroactively to the Company Defendants at the time of the alleged assault on Plaintiff. The Combs Defendants argue, further, that the allegations against the Company Defendants are not specific enough under Rule 8. On a motion to dismiss, the Court's analysis of the plaintiff's claims is limited to the four corners of the pleading, the allegations of which are given liberal construction and accepted as true. *See Johnson v. Proskauer Rose LLP*, 129 A.D.3d 59 (1st Dept. 2015). As such, when considering a motion to dismiss a complaint, the sole criterion is whether the pleading states a cause of action, and if, from the complaint's four corners, factual allegations are discerned which, taken together, manifest any cause of action cognizable at law, motion for dismissal will fail. *See Pacific Carlton Development Corp. v. 752 Pacific, LLC*, 62 A.D.3d 677 (2nd Dept. 2009); *Ruffino v. New York City Transit Authority*, 55 A.D.3d 817 (2nd Dept. 2008).; *See Sheridan v. Carter*, 48 A.D.3d 444 (2nd Dept. 2008); *Operative Cake Corp. v. Nassour*, 21 A.D.3d 1020 (2nd Dept. 2005).

Accordingly, on a motion to dismiss, a court should not resolve the merits of a claim by making factual determinations. *See T. Lemme Mechanical, Inc., v. Schalmont Cent. School Dist.*,

52 A.D.3d 1006 (3rd Dept. 2008). It is not the function of the Court to evaluate the merits of a case. *See Carbillano v. Ross*, 108 A.D.2d 776 (2nd Dept. 1985). Whether a plaintiff can ultimately establish her allegations is not part of the calculus in determining a motion to dismiss. *See Farber v. Breslin*, 47 A.D.3d 873 (2nd Dept. 2008). Rather, on a motion to dismiss, it is the trial court's duty to determine whether upon any rational construction of the evidence, trier of facts could find for plaintiff, and not to weigh proof. *See Choi v. Mann*, 104 A.D.2d 354 (2nd Dept. 1984). On a motion to dismiss for failure to state cause of action, any fact that can be fairly implied from the pleadings will be deemed alleged. *See L. Magarian & Co., Inc., v. Timberland Co.*, 245 A.D.2d 69 (1st Dept. 1997).

A pleading attacked for insufficiency must be accorded a liberal construction, and if it states, in some recognizable form, any cause of action known to law, it cannot be dismissed. *See Schlackman v. Robin S. Weingast & Associates, Inc.*, 18 A.D.3d 729 (2nd Dept. 2005). If any portion of any cause of action is sufficient, it should not be dismissed on motion. *See Lacks v. Lacks*, 12 N.Y.2d 268 (1963); *Napoli v. St. Peter's Hospital of Brooklyn*, 213 N.Y.S.2d 6 (1961). When a cause of action may be discerned, no matter how poorly stated, the complaint should not be dismissed for failure to state cause of action. *See L. Magarian & Co., Inc., v. Timberland Co.*, 245 A.D.2d 69 (1st Dept. 1997).

Indeed, to survive a motion to dismiss for failure to state a cause of action, a pleading need only state allegations from which damages attributable to the named defendants' conduct may reasonably be inferred. *See Fielding v. Kupferman*, 65 A.D.3d 437 (1st Dept. 2009). A motion to dismiss for failure to state a cause of action is available only where dispute pertains to law, not facts. *See Abrams v. Richmond County S.P.C.*, 125 Misc.2d 530 (1984); *New York State AFL-CIO v. Stimmel*, 105 Misc.2d 545 (1980).

At minimum, Defendant Bad Boy Entertainment is, on the face of the complaint, potentially subject to liability here as Sean John Clothing was wholly-owned by that Defendant. Furthermore, the Complaint alleges in detail how Combs used and managed his businesses in order to facilitate his pattern and practice of sexual assault. It is premature at this juncture to grant Defendants' motion, as discovery has not yet commenced and the Company Defendants have yet to even answer the Complaint.

It also bears noting that Plaintiff has pleaded a claim for conspiracy, under which "the plaintiff must demonstrate the primary tort, plus the following four elements:" (i) the parties' intentional participation in furtherance of a plan or purpose; (ii) an agreement between two or more parties; (iii) an overt act in furtherance of the agreement; and (iv) resulting damage or injury. *Cohen Bros.*, 181 A.D.3d 401, 404 (1st Dept. 2020). When given the benefit of every favorable inference, it is clear that the Complaint contains well-pleaded allegations satisfying the additional elements to state a claim for conspiracy to commit the underlying torts.

Plaintiff has alleged facts demonstrating that Combs, Sean John and Macy's possessed a common purpose, which was to enable Combs to commit the sexual assault without repercussion, and intentionally participating acts in furtherance of that purpose, satisfying the first element of the conspiracy cause of action. (*See* Compl. ¶ 44-45). *Second*, Plaintiff has alleged facts from which this Court can infer an agreement between Macy's, Sean John and Combs to engage in this common scheme, satisfying the second element. For example, Plaintiff has alleged that he reported the sexual assault to Macy's, and that Macy's thereafter pressured Ecko executives to fire Plaintiff because Macy's had just signed a multi-million-dollar deal with Sean John. (*See* Compl. ¶ 44). Moreover, Plaintiff alleged, upon information and belief, that Macy's destroyed or otherwise purged the report of Plaintiff's sexual assault. (*See* Compl. ¶ 45). Additionally, Plaintiff alleged

that Macy's actively placed, maintained, and/or employed Combs in a position of power and authority, despite the fact that Macy's knew or should have know that Combs had a wide-spread practice of committing sexual assault and gender motivated violence, including on premises owned and/or operated by Macy's. (*See* Compl. ¶ 53). Plaintiff also has alleged overt acts in furtherance of the aforementioned scheme, such as causing the termination of Plaintiff's employment, causing the Plaintiff to lose his company-paid apartment, and destroying records related to the assault. (*See* Compl. ¶¶ 44-45). Plaintiff finally has alleged damages he has suffered as a result of the underlying tort. *(See* e.g. Compl. ¶ 41, 46).

Because Plaintiff has pleaded all of the elements necessary to state a claim for civil conspiracy to commit the underlying torts, this Court should deny the Combs Defendants' motion to dismiss on this ground as well.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that this Court deny the Combs Defendants' Motion to Dismiss in its entirety.

Dated: March 28, 2025

    Respectfully submitted,

**CURIS LAW, PLLC**
/s/ *Antigone Curis*
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

*Attorneys for Plaintiff John Doe*